**CALIFORNIA CONSUMER ATTORNEYS, P.C.**
Michael H. Rosenstein (SBN 169091)
mhr@calattorneys.com
Sepehr Daghighian (SBN 239349)
sd@calattorneys.com
Michael William Oppenheim (SBN 331956)
mwo@calattorneys.com
10866 Wilshire Blvd, Suite 1200
Los Angeles, CA 90024
Telephone: (310) 872-2600
Facsimile: (310) 730-7377

Attorneys for Plaintiff,
**RICHARD NGUYEN**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD NGUYEN, an individual, <br><br> Plaintiff, <br> vs. <br><br> MERCEDES-BENZ USA, LLC, a Delaware Limited Liability Company, and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.:  2:22-cv-00146-MRW <br> Judge:     Hon. Michael R. Wilner <br><br> **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> [Filed Concurrently with Declaration of Sepehr Daghighian and [Proposed] Order] <br><br> Date:  May 10, 2023 <br> Time: 10:30 a.m. <br> Dept.: 7D |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 10, 2023 at 10:30 a.m. in Courtroom 550 of the Edward R. Roybal Federal Building and United States Courthouse, located at 255 E. Temple Street, Los Angeles, California 90012, Plaintiff Richard Nguyen ("Plaintiff") will, and hereby does, move this Court for an award of attorney's fees and costs and expenses pursuant to Civil Code § 1794(d) of the Song-Beverly Consumer Warranty Act.   Plaintiff moves this Court as the prevailing party pursuant to the terms of the settlement agreement reached between the parties on January 31, 2023.

Plaintiff now moves for an order awarding attorney's fees under the "lodestar" method in the amount of $34,910.00 for the legal services provided by California Consumer Attorneys, P.C. (hereinafter "CCA"). Plaintiff also requests a modest "lodestar" enhancement of 0.5x, in the amount of $17,455.00, for a total fee award of $52,365.00.  Plaintiff further moves this Court for reimbursement of verifiable costs and expenses in the amount of $22,496.68.  The total amount requested by this motion is $74,861.68.

Prior to bringing this motion, the Parties thoroughly met-and-conferred pursuant to Local Rule 7-3 on February 16, 2023.

This motion is based upon the memorandum of points and authorities filed concurrently herewith, upon the declarations filed concurrently herewith, upon such evidence, oral and documentary, that may be presented at the hearing, and upon the entire record of the case.

Dated: <u>April 11, 2023</u>          **CALIFORNIA CONSUMER ATTORNEYS, P.C.**

By: <u>/s/ Sepehr Daghighian</u>
Michael H. Rosenstein, Esq.
Sepehr Daghighian, Esq.
Michael William Oppenheim, Esq.
Attorneys for Plaintiff,
RICHARD NGUYEN

---

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

# **TABLE OF CONTENTS**

Page(s)

I.   INTRODUCTION ....................................................................1

II.   STATEMENT OF FACTS ........................................................2

    A.   The Underlying Facts of the Case ................................2

    B.   Litigation History and Settlement Attempts ....................................4

III.   ARGUMENT AND ANALYSIS ..............................................7

    A.   Plaintiff's Attorneys Are Entitled to Fees, Costs and Expenses in this Action .................................................7

    B.   The Hourly Rates Sought by Plaintiff's Attorneys Are Reasonable.................................................8

    C.   The Nature and Complexity of the Litigation Support the Attorney's Fees Requested.................................. 10

    D.   The Firm's Skill Justifies the Amount of Attorney's Fees Sought.................................................. 10

    E.   The Settlement Amount Does Not Limit the Attorney's Fee Recovery.................................................. 12

    F.   Plaintiff Should Be Granted a Lodestar Multiplier ...................... 13

        1.   The Lodestar Multiplier Should Be Granted in Contingent Cases Due to Risk and Delay of Payment ....... 14

    G.   Plaintiff is Entitled to Recover All Costs and Expenses Reasonably Incurred in Connection with this Action ................... 17

IV.   CONCLUSION ................................................................. 20

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

# <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Cazares v. Saenz*
(1989) 208 Cal.App.3d 279 ............................................................ 14

*City of Riverside v. Rivera*
(1986) 477 U.S. 561 ....................................................................... 13

*Dietrich v. Dietrich*
(1953) 41 Cal.2d 497 ..................................................................... 11

*Goglin v. BMW of North America, LLC*
(2016) 4 Cal.App.5th 462 ........................................................... 9, 13

*Graciano v. Robinson Ford Sales*
(2006) 144 Cal.App.4th 140 .................................................... *passim*

*Graham v. DaimlerChrysler Corp.*
(2004) 34 Cal.4th 553 ........................................................ 7, 14, 19

*Harman v. City and County of San Francisco*
(2007) 158 Cal.App.4th 407 .......................................................... 13

*Horsford v. Bd. of Trustees of Cal. State Univ.*
(2005) 132 Cal. App. 4th 359 .................................................. 10, 15

*In re Chiron Corp. Securities Litigation*
(N.D. Cal. Nov. 30, 2007) No. C-04-4293 VRW, 2007 WL 4249902 ........ 14

*Independent Federation of Flight Attendants v. Zipes*
(1989) 491 U.S. 754 ....................................................................... 13

*Jensen v. BMW of North America, Inc.*
(1995) 35 Cal.App.4th 112 ...................................................... 17, 19

*Ketchum v. Moses*
(2001) 24 Cal.4th 1122 .......................................... 13, 14, 15, 16

*La Mesa-Spring Valley School Dist. v. Otsuka*
(1962) 57 Cal.2d 309 ..................................................................... 11

*Los Angeles Police Protective League v. City of Los Angeles*
    (1986) 188 Cal.App.3d 1 ................................................................ 10

*Mandel v. Lackner*
    (1979) 92 Cal.App.3d 747 ........................................................ 8, 19

*PLCM Group v. Drexler*
    (2000) 22 Cal.4th 1084 ......................................................... 10, 14

*Reveles v. Toyota by the Bay*
    (1997) 57 Cal.App.4th 1139 .................................................. 7, 19

*Robertson v. Fleetwood Travel Trailers of California, Inc.*
    (2006) 144 Cal.App.4th 785 ............................................. *passim*

*Serrano v. Unruh*
    (1982) 32 Cal.3d 621 ........................................................ 8, 10, 19

*Serrano v. Priest*
    (1977) 20 Cal.3d 25 (*Serrano III*) ............................................ 14

*Vo v. Las Virgenes Municipal Water District*
    (2000) 79 Cal.App.4th 440 ........................................................ 13

### Statutes and Codes

California Code of Civil Procedure
    Section 1032(a)(4) .................................................................. 7, 19

California Code of Civil Procedure
    Section 1033.5 ............................................................................ 17

California Code of Civil Procedure
    Section 1794(d) ................................................................... *passim*

California Code of Civil Procedure
    Section 998 .......................................................................... *passim*

United States Code
Title 42 § 1988 .............................................................................. 13

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

Other Authorities

Pearl, *California Attorney Fee Awards*

   Sections 12.14A, 12.33 (2nd Ed. 2005) ........................................................ 8, 19

Sen. Report No. 93-151,

    1st Sess., pp. 23 (1973) ................................................................................ 13

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This action was brought by the purchaser of an automobile against the automobile's distributor for breach of warranty under the Song-Beverly Consumer Warranty Act (the "Song-Beverly Act").  Through this action, Plaintiff Richard Nguyen ("Plaintiff" or "Mr. Ngueyn") alleged that his 2019 Mercedes-Benz Sprinter Van (the "Subject Vehicle") was defective, and that Mercedes-Benz USA, LLC ("MBUSA" or "Defendant") was unable to conform the Subject Vehicle to its written warranty within a reasonable number of repair attempts.  On or about January 31, 2023, the parties settled the underlying claims when Plaintiff accepted Defendant's Rule 68 offer for $36,912.28, allowing Plaintiff to recover his reasonable attorneys' fees and costs by noticed motion to the Court.  The only issue that remains unresolved is the award of Plaintiff's attorneys' fees and costs.

The Song-Beverly Act expressly provides that a prevailing consumer shall be allowed to recover attorneys' fees and costs determined by the court to have been reasonably incurred in the commencement and prosecution of the action.  As such, Plaintiff now moves the Court: (1) for an award of attorney's fees pursuant to Civil Code section 1794(d) under the "lodestar" method in the amount of $34,910.00; (2) for a modest, "lodestar" modifier of 0.5x under California law, in the amount of $17,455.00; and (3) an award of actual costs and expenses incurred in the amount of $22,496.68. (Civ. Code § 1794(d).) Plaintiff requests a total of $74,861.68 in attorney's fees, costs and expenses. (Declaration of Sepehr Daghighian ("SD Dec." ¶ 13; Ex. A.)

This motion is made following the conference of counsel to resolve attorneys' fees pursuant to Local Rule 7-3, which took place on February 16, 2023. (*Id.*, ¶ 44.) However, the Parties were not able to come to an agreement, necessitating the filing of this motion. (*Id.*)

/ / /

## II.   STATEMENT OF FACTS

### A.   The Underlying Facts of the Case

On February 8, 2019, Mr. Nguyen purchased a 2019 Mercedes-Benz Sprinter Van (the "Subject Vehicle") for a total purchase price of $53,747.56. (SD Dec., ¶ 15.) The Subject Vehicle was distributed and warranted by Defendant. (*Id.*, ¶ 16.) Eventually, the Subject Vehicle exhibited serious and repeated nonconformities to warranty. (*Id.*, ¶ 17.) On January 3, 2020, after 44,139 miles of use, Mr. Nguyen presented the Subject Vehicle to Defendant's authorized repair facility, Mercedes-Benz of Long Beach ("MB-Long Beach") to diagnose issues that caused the Subject Vehicle to lose power when accelerating. (*Id.*, ¶ 18.) MB-Long Beach's technicians determined the Turbo Resonator was leaking oil and replaced its seals under MBUSA's warranty. (*Id.*)

On July 6, 2020, Mr. Nguyen presented the Subject Vehicle to Defendant's authorized repair facility, MB-Long Beach, to diagnose and repair a defect that caused the vehicle to jerk forward and lose power at acceleration. (SD Dec., ¶ 19.) Technicians at MB-Long Beach determined the Exhaust Gas Recirculation Actuator malfunctioned and replaced it under MBUSA's warranty. (*Id.*)

A month later, on August 26, 2020, Mr. Nguyen presented the Subject Vehicle to Defendant's authorized repair facility, MB-Long Beach, to diagnose and repair a defect that caused the vehicle to lose power and struggle to pick up speed. (SD Dec., ¶ 20.) Technicians at MB-Long Beach determined the Turbo Resonator was leaking oil and replaced its o-rings under MBUSA's warranty. (*Id.*)

On June 4, 2021, Mr. Nguyen presented the Subject Vehicle to Defendant's authorized repair facility, MB-Long Beach, to diagnose and repair a defect that caused the vehicle's turbo noise damper to leak oil under MBUSA's warranty. (SD Dec., ¶ 21.) Technicians at MB-Long Beach determined the turbo dampener and turbo resonator o-rings were damaged and leaking oil and replaced these parts. (*Id.*)

/ / /

Later that year, on October 5, 2021, Mr. Nguyen again presented the Subject Vehicle to Defendant's authorized repair facility, MB-Long Beach, to diagnose and repair a defect that caused the vehicle to lose power. (SD Dec., ¶ 22.) Again, technicians at MB-Long Beach determined the Turbo Resonator was leaking oil and replaced the resonator and its seals under MBUSA's warranty. (*Id.*)

On October 26, 2021, Mr. Nguyen presented the Subject Vehicle to Defendant's authorized repair facility, MB-Long Beach, to diagnose and repair a defect that caused the vehicle's turbo resonator to leak. (SD Dec., ¶ 23.) Technicians at MB-Long Beach determined the Turbo Resonator was leaking at its seams and replaced the entire turbo resonator housing under MBUSA's warranty. (*Id.*)

Mr. Nguyen presented the Subject Vehicle to Defendant's authorized repair facility, MB-Long Beach, six (6) times in two years to address jerking and lost power issues caused by a continuing Turbo Dampener O-ring oil leak and/or Turbo Resonator O-ring oil leak. (SD Dec., ¶ 24.) All repairs were covered under MBUSA's warranty. (*Id.*) The Subject Vehicle was in the repair shop for over thirty (30) days total to address this issue. (*Id.*) Mr. Nguyen presented his vehicle to Defendant's authorized repair facility, MB-Long Beach, a total of eight (8) times during that period to address various concerns and perform maintenance. (*Id.*, ¶ 25.)

Despite these numerous repairs under warranty, MBUSA refused to fulfill its legal obligation under the Act and repurchase or replace Mr. Nguyen's vehicle. (SD Dec., ¶ 26.) Instead, MBUSA hoped its routine practice of could continue, and that Mr. Nguyen would just continue to drive his defective vehicle like so many other consumers do. (*Id.*, ¶ 27.)

Given Defendant's stance in refusing to repurchase the Subject Vehicle despite having an affirmative duty, Mr. Nguyen was forced to contact CCA and

seek legal advice regarding how to have Defendant honor its warranty and obligations under the law and repurchase or replace the Subject Vehicle. (*Id.*, ¶ 28.)

**B.** **Litigation History and Settlement Attempts**

As Mr. Nguyen grew frustrated with Defendant's inability to conform the Subject Vehicle to its warranty, he contacted CCA to make Defendant repurchase or replace the Subject Vehicle in accordance with California law. (SD Dec., ¶ 15.) ¶ 29.) CCA reviewed the Subject Vehicle's repair history, analyzed Mr. Nguyen's claims, and agreed to represent him on a fully contingent basis. (*Id.*) In taking on this representation, CCA agreed to advance likely thousands of dollars in litigation costs and commit an unknown number of hours of attorney services. (*Id.*) CCA assumed the genuine risk that it would not recoup its attorney's fees and costs for several years, if at all. (*Id.*)

On January 28, 2022, Plaintiff initiated this action in the United Stated District Court, Central District of California, against MBUSA alleging various violations of the Song-Beverly Consumer Warranty Act. (SD Dec., ¶ 30.) On February 22, 2022, Defendant answered the Complaint by denying all liability and asserting numerous affirmative defenses. (*Id.*, ¶ 31.)

On February 24, 2022, Plaintiff emailed opposing counsel to schedule their Meeting of Counsel pursuant to F.R.C.P. Rule 26. (SD Dec., ¶ 32.) On March 16, 2022 Plaintiff's counsel, Michael William Oppenheim, conducted a telephonic Rule 26 Meeting of Counsel with Defendant's counsel, Jeff Thayer. (*Id.*) On March 23, 2022 Plaintiff's counsel began the preliminary draft of the Joint Rule 26 Report. (*Id.*) The Joint Rule 26 Report was filed on March 29, 2023. (*Id.*)

On March 30, 2022 the Parties lodged a Statement of Consent to Proceed Before a U.S. Magistrate Judge. (*Id.*) Magistrate jurisdiction was granted on March 30, 2022. (*Id.*)

On April 8 2022, Plaintiff's counsel, Michael William Oppenheim appeared at the Initial Case Management Conference. (SD Dec., ¶ 33.)

On March 30, 2022 Plaintiff served its Initial Disclosures. (SD Dec., ¶ 34.)

On April 13, 2022, Plaintiff served Subpoenas to Produce Documents, Information, or Objects or to permit Inspect of Premises in a Civil Action  on Defendant's authorized repair facility, Mercedes-Benz Long Beach, to obtain the Subject Vehicle's purchase and service records. (SD Dec., ¶ 35.) On May 10, 2022 Mercedes-Benz Long Beach produced documents responsive to Plaintiff's request. Plaintiff's counsel analyzed and documented Mercedes-Benz Long Beach's document production on May 13, 2022. (*Id.*)

On May 4, 2022 Plaintiff propounded twenty-nine (29) Requests for Production, sixteen (16) Interrogatories, and twenty (20) Requests for Admission on Defendant. Defendant served its responses and produced documents responsive to Plaintiff's Requests for Production on June 20, 2023. (SD Dec., ¶ 36.) On July 1, 2022, Plaintiff's counsel analyzed and documented Defendant's responses to Plaintiff's Requests for Production, Interrogatories, Requests for Admission, and Defendant's document production.

On August 25, 2022 Plaintiff's counsel took the deposition testimony of Defendant's F.R.C.P. Rule 30(b)(6) representative, Donald Crusenberry. (SD Dec., ¶ 37.) On July 27 and 28, 2023 Plaintiff met and conferred with Defendant's counsel, J. Wood, regarding the Matters for Examination and deposition date. (*Id.*) Plaintiff served its Notice of Deposition on July 28, 2022 and received and analyzed Defendant's Objections to Plaintiff's Notice of Deposition on August 19, 2022. (*Id.*)

On August 31, 2022, Defendant served Plaintiff its forty-three (43) Requests for Production, twenty-five (25) Interrogatories, and twenty-one (21) Requests for Production. (SD Dec., ¶ 38.) Plaintiff's counsel prepared Plaintiff's responses to Defendant's requests. On November 28, 2022, Plaintiff served responses to Defendant's written discovery requests. (*Id.*)

/ / /

On September 7, 2022 Plaintiff's counsel, Michael William Oppenheim, and Defendant's counsel, Julia Wood, conducted their "Half-Time" Case Management Conference with Judge Michael Wilner. (SD Dec., ¶ 39.)

On September 20, 2022 Plaintiff took the deposition testimony of Defendant's authorized repair facility, Mercedes-Benz Long Beach's, Person Most Knowledgeable and personnel. (SD Dec., ¶ 40.) Plaintiff served its Notices of Deposition of Mercedes-Benz Long Beach's Person Most Knowledgeable and personnel on August 2, 2022. (*Id.*)

On September 30, 2022 the Parties stipulated to extend the case's discovery deadlines. (SD Dec., ¶ 41.)

On October 3, 2022 Plaintiff received Defendant's F.R.C.P. Rule 68 Settlement Offer. (SD Dec., ¶ 42.) Defendant offered to settle the case and repurchase the Subject Vehicle for $32,365.72 "less the amount of costs accrued in favor of plaintiff, with the result that the total judgment amount, including recoverable costs, which Defendant shall be obligated to pay shall be $32,365.72. This shall be the total amount to be paid by Defendant on account of any liability claimed in this action, including all costs of suit and. Attorney fees will be agreed upon by the parties or through motion with the court." (*Id.*) Plaintiff rejected Defendant's settlement offer because it did not account for all of Plaintiff's incidental and consequential damages. (*Id.*) Additionally, the offer was vague and uncertain regarding Plaintiff's statutory attorney's fees. (*Id.*)

On October 27, 2022 the Parties conducted a mediation with Ron Akasaka. (SD Dec., ¶ 43.) Unfortunately, the Parties were unable to find an acceptable settlement. (*Id.*) Despite their best efforts, the Parties were not able to resolve the case at that time, necessitating further discovery and trial preparation. (*Id.*)

On November 3, 2022 Plaintiff received Defendant's F.R.C.P. Rule 68 Settlement Offer. (SD Dec., ¶ 44.) Defendant offered to settle the case and repurchase the Subject Vehicle for $36,912.28 "less the amount of costs accrued in

favor of plaintiff, with the result that the total judgment amount, including recoverable costs, which Defendant shall be obligated to pay shall be $36,912.28. This shall be the total amount to be paid by Defendant on account of any liability claimed in this action, including all costs of suit and. Attorney fees will be agreed upon by the parties or through motion with the court." (*Id.*) Plaintiff rejected Defendant's settlement offer because it was vague and uncertain regarding Plaintiff's statutory attorney's fees. (*Id.*)

On November 4, 2022 Plaintiff served its Expert's Disclosures. (SD Dec., ¶ 45.)

On November 7, 2022 Plaintiff received and analyzed Defendant's Expert's Disclosures. (SD Dec., ¶ 46.)

On January 4, 2023, Plaintiff filed a Motion for an Order Permitting Withdrawal as Counsel of Record for Plaintiff Richard Nguyen. (SD Dec., ¶ 47.) The Hearing on Plaintiff's Motion was scheduled for January 31, 2022. (*Id.*)

On January 18, 2023, the Court issued an Order Vacating the February 27, 2023 Trial date. (SD Dec., ¶ 48.)

On January 30, 2023, Plaintiff received Defendant's revised F.R.C.P. Rule 68 Settlement Offer. Defendant offered to settle the case and repurchase the Subject Vehicle for $36,912.28.  (SD Dec., ¶ 49.) That same day, Plaintiff accepted and signed Defendant's Rule 68 Settlement Offer. (*Id.*)

## III.   ARGUMENT AND ANALYSIS

### A.   <u>Plaintiff's Attorneys Are Entitled to Fees, Costs and Expenses in this Action</u>

Plaintiff is the prevailing party and is therefore entitled under the Song-Beverly Act to recoup all reasonable attorney's fees, costs and expenses. (Code Civ. Proc. § 1032(a)(4); Civ. Code, § 1794(d); *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 557; *Reveles v. Toyota by the Bay* (1997) 57 Cal.App.4th 1139.)  Absent a contrary showing, both the number of hours that the prevailing

party's attorney spent litigating the case and his or her regular hourly rate are presumed to be reasonable.  (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 639 (counsel is entitled to all hours actually spent, absent a showing of "special circumstances" that would render such an award unjust); *Mandel v. Lackner* (1979) 92 Cal.App.3d 747, 761 (an attorney's regular hourly rate is entitled to a presumption of reasonableness); Pearl, California Attorney Fee Awards, at §§ 12.14A, 12.33 (2nd Ed. 2005.)

In prosecuting this case, the efforts of CCA amount to $34,910.00, including drafting this motion and time anticipated to be spent preparing a reply and attending the hearing. (SD Dec., ¶ 13; Ex. A.) Plaintiff's counsel also requests a modest 0.5x enhancement of $17,455.00 for the case's exceptional result, delay in payment and contingent risk.  Lastly, the reimbursable costs and expenses set forth in Plaintiff's billing invoice are $22,496.68.  (Ex. A.)  In total, Plaintiff requests $74,861.68 in attorneys' fees, costs and expenses.

### B.   The Hourly Rates Sought by Plaintiff's Attorneys Are Reasonable

In evaluating fee motions in diversity cases based on the Song-Beverly Act, a Federal District Court should apply California State law. *Jimenez v. Jaguar Land Rover*, No. CV 18-2530 MRW, 2020 WL 4037208, *2 (C.D. Cal. May 20, 2020), *Hall v. FCA US LLC* (E.D. Cal. May 21, 2018, No. 1:16-cv-0684 - JLT) 2018 U.S. Dist. LEXIS 85048, at *6-8; *Gordillo v. Ford Motor Co*. (E.D. 2014) 2014 U.S. Dist. LEXIS 84359, at *3-4. However, the procedure for requesting an award of attorneys' fees is governed by federal law. *Hall, supra*, 2018 U.S.Dist.LEXIS 85048, at *6.

California courts of appeal and district courts have both expressly held that the lodestar method applies to determining attorney fees under the Song-Beverly Act.  (*Hall, supra*, at *6; *Robertson v. Fleetwood Travel Trailers of California, Inc.* (2006) 144 Cal.App.4th 785, 817.)  Under the lodestar method courts multiply the number of hours reasonably expended by a reasonable hourly rate to calculate

attorneys' fees.  (*Graciano v. Robinson Ford Sales* (2006) 144 Cal.App.4th 140, 154; *Robertson, supra,* 144 Cal.App.4th at 817.)  The prevailing consumer bears the burden to demonstrate that the fees incurred were "allowable," "reasonably necessary to the conduct of the litigation," and "reasonable in amount."  (*Goglin v. BMW of North America, LLC* (2016) 4 Cal. App. 5th 462, 470.)  In making this evaluation, a court may consider "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved." (*Id*.)

For instance, in *Goglin v. BMW*, the appellate court affirmed the trial court's award of over $185,000 in attorneys' fees and costs for a plaintiff who settled her claims against BMW under the Song-Beverly Act.  (*Id*. at 464.)  The court also found $575 per hour rate of plaintiff's counsel was reasonable as supported by exhibits to counsel's declaration indicating various state and federal courts had previously awarded him comparable hourly rates.  (*Id*. at 473-74.)  The holding states that the trial court was not obliged to consider that the defendants paid their counsel a much lower hourly rate.  (*Id*. at 474.)

In *Robertson*, the court observed that a prevailing buyer is entitled to an award of reasonable attorney's fees for time reasonably expended by his attorney.  (*Robertson*, *supra*, 144 Cal.App.4th at 817.)  The court ruled the "statutory language in section 1794(d) is reasonably compatible with a lodestar adjustment method of calculating attorney fees, including use of fee multipliers."  (*Id*. at 819.)  The trial court awarded $231,187.45 in fees based on $145,080.50 in fees through trial, plus a "multiplier" of 1.5 for a total of $217,620.75, and $13,566.70 for the attorney's fee motion.  (*Id*. at 817.)  The appellate court upheld the trial court's ruling.  (*Id.* at 822.)

In *Graciano*, the appellate court held that the prevailing rate in the community should determine the prevailing attorney's hourly rate and reversed the trial court's decision to reduce the plaintiff's attorney's hourly rate. The trial court initially rejected plaintiff's lodestar fees of $109,468.50 and request for a multiplier

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

of 2.0.  In particular, the trial court reduced the plaintiff's attorney's rate from the requested $350/hour to $250/hour, which was the court's mandated maximum rate for expert testimony.  The appellate court reversed, reasoning a court should determine the prevailing rate in the community for comparable professional legal services.  (*Graciano, supra,* 144 Cal.App.4th at 156 (*citing PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095).)  The appellate court found the plaintiff's unrebutted declarations established the proper hourly rate at $350 (for work in 2004) and reducing that rate to $250 was an abuse of discretion.  (*Id.*)  This court also reaffirmed attorney's fees are not limited to a proportion of the recovery.  (*Id.* at 164.)  On remand, the trial court found that the lodestar rate of $350/hour was reasonable *and added* a multiplier of 2.0 for total fee award of over $380,000.

Additionally, the hourly rates should be considered in the context of the rates charged by Plaintiff's attorneys in the metropolitan community in which they practice, ***not*** where the cased is venued. In *Horsford v. Bd. of Trustees of Cal. State Univ.,* the Court of Appeal reversed the trial court's refusal to award the higher of the two rates to San Francisco-based attorneys who litigated a FEHA case in Fresno. (*See Horsford v. Bd. of Trustees of Cal. State Univ.* (2005) 132 Cal. App. 4th 359, 399.)  The law "requires that the financial incentives be adjusted to attract attorneys who are sufficient to the cause.  (*Id.*)  In the absence of any realistic indication plaintiffs could find local counsel, it is an abuse of discretion to fail to consider an hourly rate based on counsel's 'home' market rate." (*Id.*)  Plaintiff's attorneys' hourly rates should not vary depending on the venue of the lawsuit.

Furthermore, the California Supreme Court has expressly ruled that prevailing parties who are entitled to recover their attorney's fees are also entitled to recover their fees for the time spent preparing fee applications and motions. (*Serrano v. Unruh*, *supra,* 32 Cal.3d at 631; *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 17; *Robertson, supra,* 144 Cal.App.4th at 817 (awarding $13,566.70 in fees for a fee motion).)

Ultimately, due consideration of the "lodestar" factors compels an award of attorney's fees based on (i) the hourly rates set forth of in the declarations filed concurrently herewith (SD Dec., ¶¶ 4 – 12); (ii) the numerous court orders confirming the reasonableness of Plaintiff's counsels' hourly rates and time billed in other Song-Beverly Act cases (SD Dec., ¶¶ 15(a) – (m), Ex. C – O); and (iii) a National Survey further supporting the reasonableness of the hourly rates. (SD Dec., ¶ 13; Ex. B.)  Moreover, Plaintiff's counsels' rates are within the range of rates charged by other attorneys with similar experience in this area of law.

**C.    The Nature and Complexity of the Litigation Support the Attorney's Fees Requested**

Determining the amount of reasonable attorney's fees may involve consideration of the nature and complexity of the case.  (*Dietrich v. Dietrich* (1953) 41 Cal.2d 497, 506; *Graciano, supra,* 144 Cal.App.4th at 147.)  Defendant will likely claim that "this is a simple lemon law case," and therefore, Plaintiff's fee request is unjustified. However, this case required a range of specialized knowledge: (1) an understanding of the full scope of nuanced consumer protection laws; (2) knowledge of the intricacies of automobiles and the lexicon associated with them, as well as how to investigate technical issues with automobiles; and (3) knowledge of auto manufacturers' and dealers' policies and protocols for repairing vehicles and complying with their legal obligations.  (SD Dec., ¶ 49.) Plaintiff's attorneys have acquired knowledge and insight about these issues and this experience typically results in significantly higher judgments or settlements for their clients, like Mr. Nguyen's $36,912.28 recovery here. (*Id.*)

**D.    The Firm's Skill Justifies the Amount of Attorney's Fees Sought**

A trial court may also take into account the skill of the attorneys when determining reasonable attorney's fees.  (*La Mesa-Spring Valley School Dist. v. Otsuka* (1962) 57 Cal.2d 309, 316.)  Despite the case's difficulties, Mr. Nguyen ultimately recovered a substantial settlement. Manufacturers are under an

affirmative duty to repurchase or replace vehicles that it is unable to conform to warranty after a reasonable number of repair attempts. (*Krotin v. Porsche Cars North America, Inc.* (1995) 38 Cal.App.4th 294, 303.) Here, Defendant did not attempt to repurchase and replace Mr. Nguyen's vehicle despite its affirmative duty to do so. (SD Dec., ¶ 26.) Only after Plaintiff's counsel filed suit on Mr. Nguyen's behalf did Defendant comply with its obligations under the Act. (*Id.*, ¶ 48.) Even then, Plaintiff's counsel's negotiations obtained a higher settlement than initially offered. (*Id.*, ¶¶ 41, 43, and 48.)

Plaintiff's attorneys specialize in consumer law and were well-equipped to handle Defendant's litigation tactics. Plaintiff's attorneys' developed litigation strategies that are highly effective and efficient. (SD Dec., ¶ 49.) Plaintiff's attorneys' specialized knowledge and experience in lemon law frequently results in outcomes far better than those obtained by attorneys who do not specialize in this specific area of law. (*Id.*) This experience provided a resolution to this matter far beyond that which Defendant was willing to entertain. (*Id.*) Because of this experience, knowledge, and expertise, Plaintiff recovered a substantial settlement, over Defendant's defense. (*Id.*)

Counsels' skill is evidenced by the size of Mr. Nguyen's recovery as well as the nominal time expended on litigation tasks, which resulted in lower overall billing. (SD Dec., ¶ 50.) In fact, Plaintiff's attorneys do not spend an inordinate amount of time researching because they specialize in this area of law. (*Id.*) Nor do they spend unreasonable time preparing pleadings, as their case documents have been regularly revised over the years and merely need to be edited, rather than drafted from scratch. (*Id.*) While substantial fees have been incurred, those fees led to the execution of effective strategies that resulted in concrete results for Mr. Nguyen.

/ / /

/ / /

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

**E.**    **The Settlement Amount Does Not Limit the Attorney's Fee Recovery**

Defendant may argue that damages in the amount of $36,912.28 do not justify the fee award requested by Plaintiff.  However, such a position is starkly against the weight of California law because the amount of attorney's fees must not be tied to any percentage of recovery.  (*See Graciano, supra,* 144 Cal. App. 4th at 164.)   In fact, it is an abuse of discretion if the trial court applies a rule of proportionality to a fee award. "We reject the proposition that fee awards under [42 U.S.C.] section 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers."  (*City of Riverside v. Rivera* (1986) 477 U.S. 561, 574; *see also* Sen. Report No. 93-151, 1st Sess., pp. 23-24 (1973) (attorney's fees under the Magnuson Moss Warranty Act are based on actual time, not a percentage of the recovery); *Robertson*, *supra,* 144 Cal. App. 4th at 820; *Independent Federation of Flight Attendants v. Zipes* (1989) 491 U.S. 754, fn.2 (fee shifting provisions under Magnuson-Moss and Song-Beverly "are to be interpreted alike"); *Goglin, supra,* 5 Cal.App.5th at 468-69 (affirming award of $185,000 in fees and costs in a Song-Beverly Act case that settled for $75,000); *Vo v. Las Virgenes Municipal Water District* (2000) 79 Cal. App. 4th 440, 446 (affirming $470,000 fee award after $40,000 judgment because the defendant was excessively litigious and took a non-settlement posture); *Harman v. City and County of San Francisco* (2007) 158 Cal. App. 4th 407 (affirming award of approximately $1.1 million in fees where plaintiffs recovered $30,300).)

Plaintiff's attorneys' fees cannot be limited to or proportioned by the size of Plaintiff's recovery. The Legislature acknowledged that substantial work might be needed to prosecute such claims against large corporations, which is the primary reason behind the fee shifting provision of the Song-Beverly Act.  "The purpose of statutory attorney fee provisions is to provide financial incentives necessary for the private enforcement of important civil rights."  (*Ketchum v. Moses* (2001) *supra,*

24 Cal.4th at 1132.)   As such, the Song-Beverly Act gives consumers the opportunity to seek legal redress even if their damages would not be high enough to warrant legal representation. Thus, the award of attorney's fees *cannot* be limited by the damages recovered by Plaintiff, and any argument by Defendant to the contrary would be disingenuous because the law is clear on this point: whether the fees incurred are small or large, they may not be tied to Plaintiff's settlement. (*Graciano, supra,* 144 Cal.App.4th at 164.)

## F.   Plaintiff Should Be Granted a Lodestar Multiplier

As part of the Song-Beverly Act, a prevailing buyer may also receive a lodestar multiplier, sometimes referred to as an adjustment or enhancement. (*Robertson, supra,* 144 Cal.App.4th at 817.)  Once a lodestar amount is determined, which involves a "careful compilation of the actual time spent and reasonable hourly compensation for each attorney," (*Robertson, supra,* 144 Cal.App.4th at 819 (*citing Serrano v. Priest* (1977) 20 Cal.3d 25, 48-49 (*Serrano III)*), the amount may then be augmented by taking various relevant factors into account, including (1) the novelty and difficulty of the questions involved and the skill displayed in presenting them; (2) the extent to which the nature of the litigation precluded other employment by the attorneys; and (3) the contingent nature of the fee award, based on the uncertainty of prevailing on the merits and of establishing eligibility for the award.  (*Id*.; *see also Graham, supra,* 34 Cal.4th at 579; *PLCM Group v. Drexler*, 22 Cal.4th at 1096.)   "[T]he purpose of a fee enhancement is primarily to compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in contingency cases."  (*Ketchum, supra,* 24 Cal.4th at 1138; *Cazares v. Saenz* (1989) 208 Cal.App.3d 279, 287-88 (risk factor alone justifies a 2.0 multiplier for a 50% chance of prevailing).)   "A 50 percent chance of recovery implies a multiplier of 2, a 25 percent chance of recovery implies a multiplier of 4, and so on."  (*In re Chiron Corp. Securities Litigation* (N.D. Cal. Nov. 30, 2007) No. C-04-4293 VRW, 2007 WL 4249902, *9.)

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

In *Robertson*, a case brought under the Song-Beverly Act, the court ruled that the "statutory language in section 1794(d) is reasonably compatible with a lodestar adjustment method of calculating attorney fees, including use of fee multipliers." (144 Cal. App. 4th at 819.) The trial court awarded a total of $231,187.45 in fees consisting of: $145,080.50 in fees incurred through trial, plus a "multiplier" of 1.5 for a total of $217,620.75, and $13,566.70 for fees in preparing the fee motion. (*Id.* at 817.) The appellate court held the trial court properly conducted a lodestar analysis and the award was not an abuse of discretion. (*Id.* at 822.) In *Graciano*, the appellate court actually *increased* the trial court's award of fees after finding that the lodestar rate of $350/hour was reasonable (in 2006) and adding a 2.0 multiplier for a total award of over $380,000. (144 Cal.App.4th at 156.) The court further reaffirmed that attorney's fees are not limited to a proportion of the recovery. (*Id.* at 164.)

While Defendant may argue a multiplier is not permitted, and cite to *Ketchum* in support, that case actually confirms the granting of a multiplier in contingency fee cases. (*Ketchum, supra,* 24 Cal.4th at 1132.) Not only is a lodestar multiplier available, but it has been awarded to Plaintiff's counsel in numerous cases. (SD Dec., ¶¶ 15(c), (i), and (j), Exs. E, K, L.)

## 1. *The Lodestar Multiplier Should Be Granted in Contingent Cases Due to Risk and Delay of Payment*

The lodestar should be enhanced by an appropriate multiplier to reflect the risk and delay in payment associated with taking a contingent case, as well as the result achieved. The lodestar reflects the basic fee for comparable non-contingent legal services. The lodestar "multiplier," however, increases or decreases the fee award based on factors not already taken into account when setting the hourly rate, such as the <u>risk</u> of accepting a case on a contingency basis, and <u>delay</u> in receiving payment. (*See Horsford v. Bd. of Trustees of Cal. State Univ.* (2005) 132 Cal. App. 4th 359, 394-95.)

1      In *Ketchum*, the California Supreme Court wrote, "[a] contingent fee

2 contract, since it involves a gamble on the result, may properly provide for a *larger*

3 *compensation* than would otherwise be reasonable." (24 Cal.4th at 1132 [emphasis

4 added].)  It further noted that:

5

6        A contingent fee must be higher than a fee for the same legal

7        services paid as they are performed.  The contingent fee
compensates the lawyer not only for the legal services he renders

8        but for the loan of those services.  The implicit interest rate on

9        such a loan is higher because the risk of default (the loss of the
case, which cancels the debt of the client to the lawyer) is much

10       higher than that of conventional loans.  (Posner, Economic
Analysis of Law (4th ed.1992) pp. 534, 567, emphasis added.)  A

11       lawyer who both bears the risk of not being paid and provides

12       legal services is not receiving the fair market value of his work if
he is paid only for the second of these functions.  If he is paid no

13       more, competent counsel will be reluctant to accept fee award

14       cases.

15 (*Id.* at 1132 [citations omitted; emphasis added].)

16      Throughout the litigation, there always existed the possibility Plaintiff would

17 not ultimately prevail.  This risk was compounded by the fact that Plaintiff's

18 attorneys advanced all litigation costs and expenses without reimbursement. Thus,

19 if Mr. Nguyen did not prevail, his attorneys would have suffered the loss of

20 numerous hours in uncompensated work and thousands of dollars in out-of-pocket

21 expenses.  Plaintiff requests a 0.2 enhancement based on that risk.

22      Further, payment was substantially delayed by the length of the case. The

23 case was initially filed on January 28, 2022 and only initially settled a year later.

24 (SD Dec., ¶¶ 30, 49.) Mr. Nguyen's attorneys are only paid if he is the prevailing

25 party, unlike Defendant's attorneys who are paid monthly regardless of outcome,

26 and absorb significant delay between filing the case, settlement, and distribution of

27 the final award. To account for this delay Plaintiff requests a 0.3 enhancement.

28 / / /

1    Accordingly, based on the risk of taking this case on a contingent fee basis
2    and the delay in payment, Plaintiff requests a nominal multiplier of 0.5.

3    **G.**    **Plaintiff is Entitled to Recover All Costs and Expenses Reasonably**
4          **Incurred in Connection with this Action**

5    Ninth Circuit precedent requires federal District Courts sitting in diversity to
6    "appl[y] state law in determining not only the right to fees, but also in the method
7    of calculating the fees." (*Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478;
8    *see also Collado v. Toyota Motor Sales, U.S.A*, 550 Fed. Appx. 368, 369-70.) As
9    such, when evaluating fee motions based on the Song-Beverly Act, this Court must
10   apply state law. (*Hall v. FCA US LLC* (E.D. Cal. May 21, 2018, No. 1:16-cv-0684
11   - JLT) 2018 WL 2298431, at *2 ["In a diversity case, the law of the state in which
12   the district court sits determines whether a party is entitled to attorney fees…."];
13   *see also Gordillo v. Ford Motor Co.*, (E.D. Cal. June 19, 2014) 2014 WL 2801243,
14   at *1 ["State law establishes the requires showing for attorney's fees in an action
15   in diversity," and "also determines the method of calculating the fees."].)

16   Under the Song-Beverly Act, a prevailing buyer shall be allowed "to recover
17   a sum equal to the aggregate amount of costs and expenses, *including attorney's*
18   *fees*," as part of the judgment.    (Civ. Code § 1794(d) [emphasis added].)
19   Additionally, the California Legislature intended the word "expenses" to cover
20   outlays not included in the detailed statutory definition of "costs," and the Song-
21   Beverly Act's legislative history demonstrates the Legislature exercised its power
22   to permit recovery of a host of litigation expenditures beyond those permitted by
23   Code of Civil Procedure section 1033.5.  (*Jensen v. BMW of North America, Inc.*
24   (1995) 35 Cal.App.4th 112, 137-138.)

25   Instructively, per the above, numerous California District Courts have held
26   that federal courts sitting in diversity in Song-Beverly Act cases must award costs
27   pursuant to *Jensen*, rather than apply the costs provision in F.R.C.P. Rule 54(d).
28   (*See Zomorodian v. BMW of North America, LLC* (C.D. Cal. 2019) 332 F.R.D.

303, 306 (citing *Clausen v. M/V NEW CARISSA*, 339 F.3d 1049 (9th Cir. 2003); *Forouzan v. BMW of N. Am., LLC*, 390 F.Supp.3d 1184, 1186-89 (C.D. Cal. 2019).) As stated in the case of *Holcomb v. BMW of North America, LLC*:

> The costs and expenses available to Plaintiffs are not limited by Rule 54(d)… The costs and expenses provision in the Song-Beverly Act is substantive for the same reasons as the courts found persuasive in *Base* [*Base v. FCA US LLC*, (N.D. Cal. Jan. 22, 2020), 2020 WL 363006, at *3], *Forouzan*, and *O'Brien* [*O'Brien v. FCA US LLC*, (N.D. Cal. Oct. 18, 2019) 2019 WL 5295066, at *7].

*(Holcomb v. BMW of North America, LLC* (S.D. Cal., Feb. 14, 2020) 2020 WL 759285, at *8; *see also Figures v. FCA US LLC*, (E.D. Cal., Feb. 19, 2020) 2020 WL 820164, at *9.)

Thus, in accordance with *Zomorodian, Forouzan, Base, O'Brien, Figures*, and *Holcomb,* the Court should apply the Ninth Circuit's holding in *Clausen* to the Song-Beverly Act, award all costs and expenses available under Cal. Civ. Code 1794(d), and not limit its award to those allowed under FRCP 54.  In *Clausen*, the Ninth Circuit held that the Oregon Oil Spill Act's costs provision was substantive in nature and affirmed the district court's decision to award costs under Oregon, rather than federal, law. *Id*. at 1064-66. The Oregon statute awarded a prevailing plaintiff "costs of any kind," including expenses like expert witness fees, "as one element of its compensatory damages" recovery. *Id*. at 1064 (emphasis removed). The court reasoned that the Oregon Legislature's decision to craft a statute that included costs and expenses as a part of a prevailing plaintiff's damages was an "express indication" of the Legislature's " 'special interest in providing litigants' with full compensation for reasonable sums expended in pursuit of an Oil Spill Act claim." *Id*. at 1065.  Similarly, the California Legislature has demonstrated a similar "special interest" in permitting prevailing Song-Beverly plaintiffs to recover costs and expenses under section 1794. As the California Court of Appeal

has noted: "The Legislature added the "costs and expenses" language to section 1794 in 1978…" *Jensen* at 138.   Clearly, applying *Clausen's* reasoning to the Song-Beverly Act, this Court should award all costs and fees incurred by Plaintiff.

As Mr. Nguyen is the prevailing party, the Song-Beverly Act entitles him to recoup all reasonable attorney's fees, costs and expenses. (Code Civ. Proc. § 1032(a)(4); Civ. Code, § 1794(d); *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 557; *Reveles v. Toyota by the Bay* (1997) 57 Cal.App.4th 1139.) Absent a contrary showing, both the number of hours that the prevailing party's attorney spent litigating the case and his or her regular hourly rate are presumed to be reasonable.  (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 639 (counsel is entitled to all hours actually spent, absent a showing of "special circumstances" that would render such an award unjust); *Mandel v. Lackner* (1979) 92 Cal.App.3d 747, 761 (an attorney's regular hourly rate is entitled to a presumption of reasonableness); Pearl, <u>California Attorney Fee Awards</u>, at §§ 12.14A, 12.33 (2nd Ed. 2005.)

In prosecuting this case, the efforts of California Consumer Attorneys amount to $34,910.00, including drafting this motion and time anticipated to be spent preparing the reply and attending the hearing. (SD Dec., ¶ 10; Ex. A.) Plaintiff's counsel also requests a modest 0.5x enhancement, in the amount of $17,455.00 to account for the exceptional result achieve, delay in payment and contingent risk posed by this case.  Lastly, the reimbursable costs and expenses set forth in Plaintiff's billing invoice are $22,496.68.  (*Id.*, Ex. A.)  In total, Plaintiff requests $74,861.68.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES

## IV.   CONCLUSION

For the reasons above, Plaintiff respectfully requests this Honorable Court award attorney's fees, costs and expenses as follows:

| | |
|---|---|
| Lodestar Fees: | $ 34,910.00 |
| +Lodestar Enhancement: | $ 17,455.00 |
| Total Fees Requested: | $ 52,365.00 |
| +Costs and Expenses: | $ 22,496.68 |
| **=Total Fees and Costs/Expenses:** | **$ 74,861.68** |

Dated: April 11, 2023          **CALIFORNIA CONSUMER ATTORNEYS, P.C.**

By: /s/ Sepehr Daghighian
Michael H. Rosenstein, Esq.
Sepehr Daghighian, Esq.
Michael William Oppenheim, Esq.
Attorneys for Plaintiff,
RICHARD NGUYEN

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES, COSTS AND EXPENSES